Shepliklian v. Phila. Rapid Trans. Co., Appellant.

Argued October 7, 1932.

Before TREXLER, P. J., KELLER,

GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ. 

*Harry S. Platowsky,* and with him *Bernard J. O'Connell,* for appellant.

*Robert F. Bonner,* for appellee.

OPINION BY STADTFELD, J., January 25, 1933:

This was an action of trespass in which plaintiff recovered a verdict against defendant on account of personal injuries sustained in a right angle collision between a truck in which plaintiff was riding, and a trolley car. A request for binding instructions was refused and a motion for judgment non obstante veredicto was overruled and judgment entered on the verdict. From said judgment this appeal is taken.

On October 30, 1928, at about one o'clock P. M., the plaintiff, a wholesale fruit and produce vendor, was proceeding northward on Cleveland Avenue, seated on the front seat of a two-ton autocar, operated by his son, a minor, between 17 and 18 years of age, and while thus crossing York Street, was injured by reason of a collision between the said autocar and a trolley car westbound on York Street.

This was an old style two cylinder auto truck with a right hand drive, so that the operator sat on the

418

right-hand side, towit, towards the east, in the direction from which the trolley car came, and the plaintiff was seated on the left-hand side of the front seat.

Cleveland Avenue is variously estimated by the witnesses as 75 feet to 50 or 70 yards west of 18th Street, and is a narrow street, just wide enough for two machines to pass each other.

York Street is 26 feet wide from curb to curb, and allowing for the rails in the center of the street, leaves about 10 feet and a fraction as the distance between the south curb of York Street and the south rail of the car tracks on York Street.

The auto truck was being operated by the son, under the direction and control of his father, the plaintiff, and when the truck came to the south house line of York Street, it was stopped for the reason that the paving of York Street was rough, and the operator wanted to go slowly across the street, in order not to shake up the fruit and vegetables with which the truck was loaded. When he came to a stop, the operator looked to the east and saw the trolley car standing on the east side of 18th Street, unloading passengers, and he then started the truck and proceeded at a speed of 1 mile per hour, and when he had reached the south curb line of York Street, he looked again to the east and saw the trolley car had started and was just crossing 18th Street.

He paid no further attention to the trolley car until he was crossing the rails on York Street, when he saw the trolley car within a few feet of him, and before he could safely cross the north rail of York Street, the auto truck was struck by the said trolley car on the right side near the rear and pushed some few feet to the west and over towards the north curb of York Street.

The plaintiff corroborated his son, the operator of the truck, stating that when the auto truck came to a stop at the house line of York Street, he saw the trolley

car at the east side of 18th Street, and although he saw it start and proceed towards him at a fast speed, he in no way interfered with his son in the operation of the truck.

John Shepliklian, son of the plaintiff, and who operated the truck at the time, testified that he was going north on Cleveland Avenue and stopped at the house line at York Street to see that the clearance was right; that he made a dead stop and looked up and saw a trolley car at 18th Street on the east side, leaving passengers off and he then started across the street; when he got to the curb line the car was crossing 18th Street; that he got across with the back wheels on the last rail when the truck was struck. On cross-examination he testified in part, that he first looked at York Street toward 18th Street as he got to the house line; that the trolley car was then leaving passengers off at 18th Street. "Q. But I understand from the time you left the curb line of York Street you did not look again east toward 18th Street and took it for granted that the road was clear. Is that right? A. Yes. Q. How fast was that trolley car coming when you last saw it? A. I imagine it was coming down 12 or 15 miles an hour. Q. And where was it relative to 18th Street? Was it already across 18th Street or was it just crossing 18th Street? A. Across 18th Street. Q. It had already crossed 18th Street when you saw it last? A. Yes. Q. How far was it across 18th Street to the west of 18th Street? A. I guess just the front of the trolley car was at the house line of 18th Street on the west side. Q. Then the length of the trolley car would have been across 18th Street? A. I guess it would. ......, Q. And at the time you last saw it crossing 18th Street, it was going 12 miles an hour. A. 12 miles an hour. Q. When did you next see the trolley car before you were struck? A. Right on top of me. Q. How far was it away then? A. I guess about three or four feet. ...... How fast were you driving at the time you

were crossing York Street? A. Very slow. Q. That don't mean anything. How fast were you driving? A. A mile an hour—as slow as the truck will practically go. ...... Q. Then you increased your speed as you were crossing over? A. I tried to increase my speed, but the truck won't pick up that fast. It is only a two cylinder truck. Q. When did you try to increase your speed? A. When he was right on top of me, I tried to swing over.''

The plaintiff himself testified on cross-examination as follows: Q. You saw the trolley car west of 18th Street when you got to York Street? A. Yes. Q. It was coming fast? A. Yes. Q. Then when your truck started across York Street did you again look at the trolley car? A. I don't understand. Q. I will say it over again. When your truck was crossing York Street...... A. Yes. Q. Did you then look again and see the trolley car? A. Yes. Q. And where was the trolley car then? A. The trolley car was coming fast. Q. Coming fast? A. Yes. Q. Then your son still went on with his truck? A. The son tried to make something...... Q. Your son tried to go in front of the trolley car......you saw the trolley car coming fast at 18th Street? A. Yes. Q. And your son was driving the truck north on Cleveland Avenue, across York Street? A. Yes. Q. And you said a while ago ......did I understand you to say that your son tried to get in front of the trolley car? Is that right? A. Going up north; yes. Q. And you saw the trolley car going fast and your son was driving north on Cleveland Avenue crossing York Street? A. Yes ...... Q. And then when you saw the trolley car five or six feet away from your truck and the motorman doing something, with cards and with the passengers, did you tell your son to stop the truck, or did you go right ahead? A. I didn't say anything to him. Q. And your son tried to go across the tracks with his truck? A. Yes. Q. Is that right? A. The car was going fast.

My boy tried to do something. Q. You say your boy tried to do something. What did you mean? What was your boy trying to do? A. I don't know. I don't drive. He tried to go fast and the car came. Q. He tried to get past the trolley car? A. The car came fast and I saw the danger. Q. Did you say anything to your son when you saw the car coming fast and you saw the danger? 'What did you say to your son? A. I didn't say anything to him. He was driving. Q. You let him go right on? A. He was driving. What have I got to say? Q. You could tell him to stop, couldn't you? A. What should I tell him to stop for? Q. So you would not get hit. A. He was driving. Q. You say you saw the trolley car coming fast and then the truck was five or six feet away from the trolley car and you saw there was going to be an accident— do you mean to say you didn't say anything to your son? A. I could do nothing. He was driving. Q. You left it entirely to your son. You did not say anything. And then your son tried to go in front of the trolley car? A. Yes.''

From this testimony of plaintiff himself it is clear that the son tried to cross York Street at his slow speed in front of what he termed was a fast moving trolley car. Seeing this fast moving car approaching him, he did not do anything to warn his son or to stop him from proceeding with the truck. He was seated beside his son, the operator, who was his agent and under his control and had a clear view of the entire situation, and, although he saw the danger, he in no way interfered with the operation of the truck, and, therefore, any negligence on the part of the operator is imputed to the plaintiff.

In the case of Steinberg v. Phila. Rapid Transit Co., 87 Pa. Superior Ct. 321, similar to the instant case, a judgment in favor of plaintiff was reversed, this court quoting from Evans v. Pittsburgh Rys. Co., 283 Pa. 180, said: ''In neglecting to stop immediately

before proceeding onto the tracks, when the street car, in plain view, was speedily bearing down upon him, plaintiff failed to exercise the care required under the circumstances.'' To same effect, Sklaroff v. Phila. Rapid Transit Co., 100 Pa. Superior Ct. 237.

Plaintiff was clearly guilty of contributory negligence.

The assignments of error are sustained, the judgment reversed and judgment now entered in favor of defendant.